UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARLA STAGLIANO

                    Plaintiff,

          v.                                        6:20-CV-0253 (LEK/TWD)

HERKIMER CENTRAL
SCHOOL DISTRICT, *et al.*,

                    Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff Marla Stagliano has brought this action under the Family and Medical Leave

Act of 1993 (the "FMLA"), 26 U.S.C. § 2615, against Herkimer Central School District and the

Herkimer Board of Education (collectively, "Defendants"). Dkt. No. 1 ("Complaint").

        In the Complaint, Plaintiff asserts that Defendants violated the FMLA by retaliating

against her through the initiation of disciplinary proceedings under § 3020-a of the New York

Education Law. Id. at 6. After the Court granted Plaintiff leave to amend the Complaint, Dkt.

No. 21, Plaintiff filed an amended complaint, Dkt. No. 22 ("Amended Complaint"), asserting

an additional FMLA claim. Am. Compl. at 6–8.

        Now before the Court is Plaintiff's motion for a temporary restraining order and

preliminary injunction. Dkt. No. 20-14 ("Plaintiff's Memorandum of Law").[1] Defendants

_____

        [1] Plaintiff filed a number of affidavits and deposition transcripts in support of her motion
for a temporary restraining order and preliminary injunction, some of which the Court refers to
throughout this Memorandum-Decision and Order. See Dkt. Nos. 20-1 ("Plaintiff's Affidavit");
20-13 ("Plaintiff's Deposition"); 20-8 ("Thomas Deposition"); 20-11 ("Richard Deposition"); 20-
12 ("Miller Deposition").

oppose Plaintiff's motion. Dkt. No. 29-10 ("Response").[2] For the reasons that follow, the Court

denies Plaintiff's motion for a temporary restraining order and preliminary injunction.

## II.    BACKGROUND

### A.  Factual History

#### 1.  The Parties

Plaintiff has taught physical education at Herkimer Central School District since July 1,

2004. See Pl.'s Aff. at 1. She taught at the district's elementary school until the 2019-20 school

year, when she was transferred to the middle school. See id.

Defendants are the Herkimer Central School District and the Herkimer Board of

Education. Docket.

#### 2.  Plaintiff's Prior Lawsuit Against Defendants

This is not the first dispute between these litigants to come before this Court. See

Stagliano v. Herkimer Cent. Sch. Dist., 151. F. Supp. 3d 264 (N.D.N.Y. 2015) (Kahn, J.)

("Stagliano I"). In Stagliano I, Plaintiff sought, and the Court granted, a temporary restraining

order prohibiting these same defendants from conducting a disciplinary hearing against her

under New York Education Law § 3020-a. Id. at 277. The disciplinary charges challenged by

Plaintiff in Stagliano I stemmed from her postpartum absences from work. Id. at 268. Plaintiff

alleged that Defendants violated the FMLA in initiating such charges against her. Id. at 267.

The crux of Plaintiff's claim in the instant lawsuit is that she is being retaliated against for this

previous exercise of her rights. See Pl.'s Aff. at 4 (" . . . I was retaliated against for having to

---

[2]  Defendants filed supporting documents with their Response, some of which the Court refers to throughout its Memorandum-Decision and Order. See Dkt. Nos. 29-3 ("Vogt Affidavit"); 29-4 ("Abbe Affidavit"); 29-5 ("Miller Affidavit").

defend my FMLA rights in the prior litigation and because defendants continue to ignore the substantive requirements of the FMLA").

The Court began its decision in <u>Stagliano I</u> by recognizing that federal courts must generally abstain from interfering with certain pending state proceedings, including § 3020-a hearings, under <u>Younger v. Harris</u>, 401 U.S. 37 (1971). <u>See</u> <u>Stagliano I</u> at 270–71. However, the Court refused to abstain because the facts triggered the bad-faith exception to <u>Younger</u> abstention. <u>See</u> <u>id.</u> at 271 ("While the Court finds that this action is subject to <u>Younger</u>, it nonetheless finds that Plaintiff has alleged sufficient facts to satisfy the bad-faith exception."). In applying the bad-faith exception to <u>Younger</u> abstention, the Court noted that "the inference is easy to draw that Defendants are attempting to broadly suppress their employees' right to use sick leave to care for family, one of the core protections of the FMLA." <u>Id.</u> at 272.

Having reached the merits, the Court in <u>Stagliano I</u> next decided that Plaintiff was entitled to the temporary restraining order she sought. <u>Id.</u> at 276. First, it decided that irreparable harm was likely in the absence of relief because there could be a chilling effect on other teachers' willingness to take sick leave if they feared disciplinary charges. <u>Id.</u> at 274. Next, the Court determined that the balance of hardships favored Plaintiff over Defendants. <u>Id.</u> at 276. With Defendants enjoined from prosecuting absenteeism-related disciplinary charges against Plaintiff, the parties eventually reached a settlement of Plaintiff's FMLA claims. <u>See</u> Pl.'s Aff. at 3.

### 3. Plaintiff's Conduct and the § 3020-a Charges Against Her

Plaintiff seeks to enjoin Defendants from prosecuting a § 3020-a disciplinary proceeding against her. <u>See</u> Pl.'s Aff. at 1. The Court next sets out Plaintiff's conduct that

ostensibly[3] led to the initiation of the § 3020-a charges.

a.  The Counseling Memoranda

On August 29, 2018, Plaintiff received a counseling memorandum from Principal Renee Vogt. See Pl.'s Aff., Exh. I (the "August 2018 Counseling Memorandum") at 64; see also Vogt Aff. ¶ 5. The memorandum alleged that Plaintiff failed to complete a number of end-of-year requirements, including submitting her plan book, grade book, and check-out form. See August 2018 Counseling Memorandum at 64.

On December 7, 2018, Plaintiff received a counseling memorandum from Principal Vogt for failing to submit her first-quarter grades. See Pl.'s Aff., Exh. J (the "December 2018 Counseling Memorandum") at 67; see also Pl.'s Aff. ¶ 35; Vogt Aff. ¶ 8. Plaintiff has maintained that the reason for the missed deadline was the district's failure to indicate when grades were due on its internet calendar. See December 2018 Counseling Memorandum at 67; see also Pl.'s Aff. ¶ 35.

b.  The Cell Phone Video

Defendants investigated Plaintiff for a video taken on her cell phone during gym class at Herkimer Elementary School on December 12, 2018. See Pl.'s Aff., Exh. D ("Video Investigation") at 45. The investigation began when a complainant reported that a special education student was being laughed at on the video. See Pl.'s Aff. at ¶ 13; Video Investigation

---

[3]  As discussed in detail below, the parties fiercely dispute Defendants' subjective motivation in prosecuting Plaintiff under New York Education Law § 3020-a. Compare Pl.'s Aff. at 1 ("Defendants are seeking to discipline me and terminate my employment in retaliation for prior litigation I brought against defendants for violating rights guaranteed to me by the [FMLA]") with Response at 18 ("The District has established that numerous legitimate disciplinary reasons exist for its actions regarding the § 3020-a charges that were filed against the Plaintiff in February of 2020.").

at 45. However, the investigation revealed that the focus of the video was on two adults

demonstrating sled-pulling, not the student, who apparently was enjoying himself in the

footage. Video Investigation at 45–46. Plaintiff shared the video with a former romantic partner

who was on the Board of Education and a current romantic partner who was a district-employed

psychologist. See Pl.'s Aff. ¶ 13. Though the investigation found the student had not been

ridiculed, the investigator concluded that Plaintiff's creation and dissemination of the video

violated school policy regarding student privacy. Video Investigation at 52.

c.  The May 2019 Meeting

On approximately May 1, 2019, during a meeting in the administration office, Plaintiff

crumpled a piece of paper, threw it, and cussed. See Vogt Aff. ¶ 13; Pl.'s Dep. at 14; Miller

Aff. at 3–4.

d.  The Back Rubs Received from a Student

Finally, the Court turns to Plaintiff's conduct that is at the center of the upcoming

§ 3020-a hearing against her. See Pl.'s Aff. ¶ 5 (referring to the other charges as an

"afterthought"). During the 2018-19 school year, while Plaintiff was teaching at Herkimer

Elementary School, she began receiving back rubs[4] from a fifth-grade student in her gym class.

See Pl.'s Dep. at 16. The back rubs, which were apparently initiated by the student, see id. at

20; Richard Dep. at 16, continued into the following academic year, when both Plaintiff and the

---

[4]   The parties characterize the contact between Plaintiff and the student differently. Defendants characterize it as "massages." See, e.g., Response at 3. Plaintiff, by contrast, refers to it as pinching of her trapezius muscle. See, e.g., Pl.'s Dep. at 15 ("The word massages is completely taken out of context. I would more so call it pinching my traps, so I will not disclose them as massages."); Pl.'s Aff. at 2. Because Plaintiff has used the phrase "back rubs" to describe the conduct, see id. at 20, the Court adopts that characterization.

student moved to the district's middle school, see Pl.'s Dep. at 16–17. According to Plaintiff, each back rub would last for approximately ten to thirty seconds. See Pl.'s Dep. at 16. Plaintiff estimated that she received no more than ten back rubs from the student, see id. at 19, all in view of other students, see id. at 20; Response at 8. Kevin Thomas, another physical education teacher also received back rubs from the student. See Pl.'s Aff., Exh. L ("Investigative Report") at 77; Thomas Dep. at 10.

Plaintiff would reward the student, giving him $10 on one occasion and, on two occasions, a $10 gift card for the video game Fortnite. See id. at 81. However, Plaintiff asserts these gifts were meant as a reward for the student's assistance with tasks such as forming teams and keeping score in gym class. See Pl.'s Aff. at 16. Defendants argue that the "gifts created the perception among the Plaintiff's students that the student she was receiving massages from was being paid in exchange for his massages." Response at 3.

The school received an anonymous complaint regarding the back rubs on December 5, 2019. See Investigative Report at 75. Superintendent Robert Miller directed Principal Zach Abbe to investigate. See Miller Aff. ¶ 7. On December 17, 2019, Superintendent Miller confronted Plaintiff in the school's gymnasium and asked to see her in his office in fifteen minutes on an "urgent matter." Pl.'s Aff. at 12. Plaintiff arrived to find Miller joined by Principal Abbe. Miller handed Plaintiff a letter stating she was being placed on leave until further notice. Id. Pressed for an explanation, Miller referenced inappropriate conduct between Plaintiff and a student. Id. Incensed, Plaintiff hurled expletives and a file folder at Miller. See Investigative Report at 75; see also Abbe Aff. at 3; Miller Aff. at 3.

6

e.  The § 3020-a Charges

On February 19, 2020, based on the aforementioned conduct, the Herkimer Board of
Education found that probable cause existed to bring four charges against Plaintiff under
§ 3020-a of the New York Education Law. See Pl.'s Aff., Exh. A (the "Section 3020-a
Charges") at 28. Charge I alleges conduct unbecoming of a teacher based on: the back rubs; the
gifts to the student who gave the back rubs; Plaintiff's conduct at the December 17, 2019
meeting with Superintendent Miller and Principal Abbe; Plaintiff's failure to complete her end-
of-year responsibilities; Plaintiff's failure to submit grades for the first quarter of the 2018-19
school year; the gym-class video taken by Plaintiff on her cell phone, and her sharing of that
video with a board member and another district employee; and Plaintiff's conduct in the May
2019 meeting. Id. at 29–31. Charge II alleges conduct of an immoral character based on: the
back rubs; the gifts to the student who gave the back rubs; Plaintiff's conduct at the December
17, 2019 meeting with Superintendent Miller and Principal Abbe; and Plaintiff's conduct in the
May 2019 meeting. Id. at 31–32. Charge III alleges insubordination and Charge IV alleges
neglect of duty, both based on Plaintiff's failure to complete her end-of-year responsibilities
and Plaintiff's failure to submit grades for the first quarter of the 2018-19 school year. Id. at
32–33.

"Because the Plaintiff is a tenured teacher, the District cannot take any disciplinary
action against her without providing a full and fair hearing before a Hearing Officer who must
be agreed to by the parties." Response at 3; see also Miller Aff. at 4. Plaintiff seeks to enjoin
this hearing, which is scheduled for September 8, 2020. See Pl.'s Mem. of Law at 1. If Plaintiff
is found guilty at the hearing, the Herkimer Board of Education seeks a penalty of dismissal.

See Section 3020-a Charges at 36.

### B. Procedural History

Plaintiff filed her Complaint on March 6, 2020. Docket. In it, she asserted one count under the FMLA, arguing that Defendants would not have initiated the § 3020-a proceeding against her had she not previously sued them. See Compl. at 5–6. Plaintiff filed an amended complaint on August 20, 2020 asserting another FMLA claim. See generally Am. Compl. The added claim was based on a counseling memorandum placed in Plaintiff's personnel file regarding absences that Plaintiff alleges were covered under the FMLA. See id. at 7.

On August 19, 2020, Plaintiff filed her motion for a temporary restraining order and preliminary injunction. Docket. In it, she argues that "this Court should temporarily and permanently enjoin Defendants from prosecuting a pending proceeding under New York State Education Law § 3020-a" against her. Pl.'s Mem. of Law at 23. Defendants filed their Response on August 28, 2020. Plaintiff filed a reply on September 3, 2020. Dkt. No. 30 ("Reply").

### III.   LEGAL STANDARD

The standard for the issuance of a temporary restraining order is identical to that for the issuance of a preliminary injunction. See Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, 965 F.2d 1224, 1228 (2d Cir. 1992). To obtain a preliminary injunction, "a plaintiff must demonstrate (1) irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions on the merits and a balance of hardships tipping decidedly in the plaintiff's favor in order for a preliminary injunction to issue." Fair Hous. in Huntington Comm. v. Town of Huntington, 316 F.3d 357, 365 (2d Cir. 2003) (internal quotation marks omitted).

## IV.    DISCUSSION

Before it can reach the merits of Plaintiff's motion for a temporary restraining order, the Court analyzes whether it is required to abstain from granting Plaintiff the relief she seeks. For the reasons discussed below, the Court must abstain.[5]

### A.  <u>Younger</u> Abstention and the Bad-Faith Exception

Federal courts "refrain from hearing cases that would interfere with a pending state criminal proceeding or with certain types of state civil proceedings." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996) (citing <u>Younger v. Harris</u>, 401 U.S. 37 (1971)). Section 3020-a hearings are among the state proceedings insulated from interference by the federal judiciary. <u>See, e.g.</u>, <u>Stagliano I</u>; <u>Ford v. Bd. of Educ.</u>, No. 19-CV-6327, 2019 U.S. Dist. LEXIS 194729, at *9 (S.D.N.Y. Nov. 6, 2019); <u>Ingber v. New York City Dep't of Educ.</u>, No. 14-CV-3942, 2014 U.S. Dist. LEXIS 78212, at *13 (S.D.N.Y. June 9, 2014); <u>Levich v. Liberty Cent. Sch. Dist.</u>, 258 F. Supp. 2d 339, 342 (S.D.N.Y. 2003). Abstention is based on "giving the respect to our co-equal sovereigns that principles of 'Our Federalism' demand[.]" <u>Younger</u>, 401 U.S. at 44. And, as the Court noted in <u>Stagliano I</u>, the doctrine "is consistent with a strong preference for enforcing federal rights and federal interests . . . in ways that will not unduly interfere with the legitimate activities of the States." <u>Stagliano I</u> at 270 (internal quotation omitted).

Nevertheless, "[a] proceeding that falls under <u>Younger</u> may still move forward if the

---

[5] Though the Court abstains from enjoining the § 3020-a hearing, it takes no position on whether Plaintiff can succeed on the merits of the Amended Complaint's FMLA claims. When ultimately adjudicated, those claims will be subject to a different standard than that relevant to whether the Court may interfere with a state proceeding like the § 3020-a hearing.

federal plaintiff shows 'that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive.'" Stagliano I at 270 (quoting Levich, 258 F. Supp. 2d at 342). The rationale behind this "bad-faith exception" to Younger abstention is that "a state has no interest in continuing actions brought with malevolent intent." Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 199 (2d Cir. 2002). In assessing whether the exception should be applied, courts emphasize "the subjective motivation of the state authority in bringing the proceeding[.]" Id. at 199.

The burden is on the plaintiff to establish the applicability of an exception to Younger abstention. See id.[6] "[F]or a federal plaintiff to invoke the bad faith exception, 'the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome.'" See id. at 199 (quoting Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994)).[7]

### B. Plaintiff's Admissions

The Court begins its assessment of whether the Section 3020-a Charges were brought in bad faith by noting that Plaintiff concedes she essentially engaged in the conduct for which she

---

[6] There does not appear to be an established level of proof that a plaintiff must meet in alleging bad faith to evade Younger abstention. In Stagliano I, this Court satisfied itself by noting that Plaintiff "alleged sufficient facts" to avail herself of the exception. Stagliano I at 271. However, other courts have referred to the "heavy burden" on plaintiffs seeking to invoke the bad-faith exception to Younger. See, e.g., Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir. 1997); Smith v. Gribetz, 887 F.Supp. 583, 587 (S.D.N.Y. 1995).

[7] The Court is somewhat hamstrung in attempting to ascertain whether Defendants have a "reasonable expectation of obtaining a favorable outcome" at the § 3020-a hearing by the fact that the specific charges against Plaintiff—conduct unbecoming of a teacher, conduct of an immoral character, insubordination, and neglect of duty—are apparently undefined. See New York Education Law § 3012(2)(a) (including these charges among those that can lead to removal of a tenured teacher but not defining them); see also Pl.'s Aff. ¶ 89 (noting that school policy does not define "inappropriate" fraternization with students). The parties did not brief the elements of the Section 3020-a Charges. See generally Pl.'s Mem. of Law; Response.

10

is charged. <u>See</u> Pl.'s Dep. at 10–11 (admitting to cursing at Superintendent Miller and throwing a file folder in his vicinity at the December 17, 2019 meeting), 14 (admitting to throwing a crumpled piece of paper at a meeting), 15–17 (admitting to receiving the back rubs from a student), 25 (admitting to providing the student with gifts), 28 (admitting to failing to turn in first-quarter grades), 30 (admitting to taking a video in which a student could be seen and sending the video to two individuals).

Because Plaintiff admits to this behavior, the Court finds it exceedingly difficult to envision a scenario in which Defendants would "have no reasonable expectation of obtaining a favorable outcome," <u>Diamond "D" Constr. Corp.</u>, 282 F.3d at 199, at the § 3020-a hearing. Nevertheless, the Court will thoroughly review Plaintiff's argument that bad faith permeates the charges.

### C.  Plaintiff's Allegations of Bad Faith

Plaintiff points to the Section 3020-a Charges against her as the latest in a long line of retaliatory acts by Defendants against her for her earlier FMLA suit. <u>See</u> Pl.'s Aff. ¶ 1. The Court disagrees, finding that Plaintiff has not met her burden to establish that the Section 3020-a Charges were born out of a retaliatory motive.

Plaintiff paints a hostile picture of her work environment since <u>Stagliano I</u>. Many of the allegations of retaliation she details are not directly related to the initiation of the Section 3020-a Charges. However, the Court still considers these assertions to see if they evince a pattern of retaliation that culminated in the Section 3020-a Charges.

*1.  Alleged Retaliation Against Plaintiff*

11

a.  Superintendent Miller's Alleged Animosity Toward Plaintiff

Plaintiff alleges that Superintendent Miller's wife informed her that he wanted to retaliate against her after Stagliano I. See Pl.'s Dep. at 35. While troubling, this allegation does not demonstrate that Defendants "have no reasonable expectation of obtaining a favorable outcome," see Diamond "D" Constr. Corp., 282 F.3d at 199, in the § 3020-a hearing. Furthermore, Superintendent Miller's attitude toward Plaintiff is not necessarily indicative of the "subjective motivation of the state authority . . . bringing the proceeding," id. Here, though Superintendent Miller "preferred" charges, see Section 3020-a Charges at 29, the authority initiating the state proceeding is the Herkimer Board of Education, which approved each of the Section 3020-a Charges by a 6-0 vote with one member absent, see id. at 34–36. Even assuming animosity by Superintendent Miller toward Plaintiff, he cannot act unilaterally. See New York Education Law § 3020-a(2) ("Within five days after receipt of the charges, *the employing board*, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against an employee pursuant to this section.") (emphasis added); see also Reply at 6 n.3 (noting that the Board had to ratify the Section 3020-a Charges). Therefore, the allegation of Superintendent Miller's bias against Plaintiff does not allow Plaintiff to circumvent Younger abstention.

b.  Defendants' Repeated Investigations of Plaintiff

Plaintiff next points to a number of investigations she has been subjected to as evidence of Defendants' retaliatory motives. See Pl.'s Mem. of Law at 8–9, 11 ("The investigations themselves are evidence of bias."); Pl.'s Aff. ¶¶ 10–18. First, Plaintiff was investigated and cleared of wrongdoing in relation to harassment of another teacher. See Pl.'s Mem. of Law at 8;

12

Pl.'s Aff. ¶ 12. Second, she was investigated for taking and disseminating the gym-class video on which a student could be seen; the Video Investigation resulted in a charge against Plaintiff for conduct unbecoming of a teacher because the appearance of the student apparently violates privacy policy. See Section 3020-a Charges at 31; Response at 10. Finally, Plaintiff was investigated for receiving back rubs from a student. See Response at 10.

In the Court's view, the string of investigations against Plaintiff does not support a finding that the Section 3020-a Charges were initiated in bad faith. The investigation related to alleged harassment of a co-worker "determined, after a lengthy report, that the allegations were unfounded and in fact criticized the other teacher." Pl.'s Aff. at 3; see also Miller Dep. at 71. The only discipline Plaintiff faced for the alleged co-worker harassment was a memorandum in her personnel file noting that a complaint had been made against her. See Pl.'s Aff., Exh. B at 38. The Video Investigation resulted in a finding that Plaintiff violated Herkimer Central School District's privacy policy. See Video Investigation at 52.

In sum, Defendants' prior investigations of Plaintiff do little to establish that Defendants now have "no reasonable expectation of obtaining a favorable outcome," Diamond "D" Constr. Corp., 282 F.3d at 199, at the hearing on the Section 3020-a Charges. Whether Plaintiff was unfairly investigated in the past is not relevant to whether the Defendants have some likelihood of success at the § 3020-a hearing. Plaintiff's position seems to be that Defendants were desperate for revenge after Stagliano I and therefore subjected her to endless investigations. See Pl.'s Mem. of Law at 8 ("Plaintiff is the only teacher who has been the subject of three investigations by the BOCES Labor Relations Office."). Even if this is the case, the Court's hands are tied under Younger from intervening because the Section 3020-a Charges appear to

have merit, giving Defendants at least some "reasonable expectation" of succeeding in their

prosecution of those charges.

### c.  Violations of the Collective Bargaining Agreement

As further evidence of Defendants' retaliatory motives, Plaintiff points to the fact that

Defendants violated the collective bargaining agreement, see Pl.'s Aff., Exh. C, by placing

disciplinary memoranda in her personnel file without giving her a chance to review them, rebut

them, and sign them, see Pl.'s Mem. of Law at 9. The Court finds these apparent violations of

the collective bargaining agreement to be of little probative value in ascertaining whether

Defendants brought the Section 3020-a Charges with "malevolent intent," Diamond "D"

Constr. Corp., 282 F.3d at 199.

### d.  Inclusion of Less Recent Conduct in the Section 3020-a Charges

Plaintiff next alleges that Defendants' inclusion of the subject matter of previous

investigations in the instant Section 3020-a Charges shows Defendants' retaliatory motive. See

Pl.'s Mem. of Law at 10. The Court disagrees. As Defendants correctly note, Response at 11,

the limitations period for § 3020-a charges is three years, see New York Education Law

§ 3020-a(1). Nothing precludes Defendants, then, from including incidents like the gym-class

video and missed submission deadlines in the instant charges.

### e.  Defendants' Disregard of Plaintiff's Positive Evaluations

As further proof of retaliation, Plaintiff points out that the Section 3020-a Charges were

initiated despite her history of positive performance evaluations. See Pl.'s Mem. of Law at 11.

However, the Court agrees with Defendants that "[i]t goes without saying that a teacher that

rates as effective or highly effective through performance evaluations may still engage in a level

of conduct separate from those evaluations that warrants disciplinary action." Response at 12.

Therefore, the Court does not read any retaliation into the fact that Defendants now seek the

termination of a teacher they have sometimes praised. Cf. Ebanks v. Neiman Marcus Group,

Inc., 414 F. Supp. 2d 320, 332–33 (S.D.N.Y. 2006) (no evidence to support retaliation claim

where plaintiff was consistently given positive reviews after her engagement in protected

activity).

### 2.  Alleged Retaliation Against Plaintiff's Associates

The Court next details Plaintiff's allegations of retaliation that relate to Defendants'

treatment of her associates.

### a.  Kevin Thomas

Thomas, Plaintiff's longtime fellow physical education teacher, gave an affidavit in

Stagliano I. See Pl.'s Mem. of Law at 7. More recently, Thomas received a letter of reprimand

for receiving a back rub from the student. See Dkt. No. 29-7 at 7–8. By signing the letter,[8]

Thomas admitted "that the District has sufficient evidence to have the reprimand placed in his

personnel file." Id. at 1. When interviewed as part of the investigation into the back rubs on

January 7, 2020,[9] Thomas so supported Plaintiff that his opinion appears to have been

discredited. See Investigative Report at 77. Superintendent Miller told Thomas on February 1,

2020 that he "should rethink who [he] support[s] and stick[s] up for." Thomas Dep. at 34.

---

[8]  Thomas was apparently told that he too would face § 3020-a charges related to the back rub if he did not agree to sign the reprimand letter. See Thomas Dep. at 35.

[9]  The Investigative Report states that Thomas was interviewed on January 7, 2019. See Investigative Report at 76. Because the school did not receive the anonymous complaint regarding the back rubs until December 2019, see Investigative Report at 75, the Court assumes the actual interview date was January 7, 2020.

Plaintiff's argument that Superintendent Miller's comment to Thomas was in retaliation for Thomas' <u>Stagliano I</u> affidavit is, in the Court's view, stretched. Thomas' <u>Stagliano I</u> affidavit was filed with this Court on December 7, 2015. <u>See</u> Dkt. No. 4-4, <u>Stagliano I</u>. The meeting between Thomas and Superintendent Miller in which the comment was made occurred on February 1, 2020. <u>See</u> Thomas Dep. at 34. In Plaintiff's telling, then, Superintendent Miller waited well over four years—until Thomas and Plaintiff were accused of receiving back rubs from a student—to voice his displeasure with Thomas' participation in <u>Stagliano I</u>. <u>Cf.</u> <u>Woodruff v. DiMario</u>, 164 F.Supp. 2d 1, 9 (D.D.C. 2001) ("The more time that elapses between the protected activity and the alleged acts of retaliation, the more difficult it is to justify an inference of causal connection between the two.").

Furthermore, the alleged comment by Superintendent Miller is susceptible to an interpretation in which he was warning Thomas not to associate with Plaintiff not because of her assertion of rights in <u>Stagliano I</u>, but because of her alleged, repeated contact with a student. <u>Cf.</u> <u>Jackson Hewitt Tax Serv. v. Kirkland</u>, 455 Fed. Appx. 16, 19 (2d Cir. 2012) (summary order) (statements by state employee found to be expressing condemnation of behavior state could target, not demonstrative of retaliation). The "support" Superintendent Miller was warning Thomas against lending Plaintiff could have been his overly supportive comments made when interviewed, not the affidavit from <u>Stagliano I</u>. Thus, if Superintendent Miller's comment to Thomas about who he associates with lends any weight to Plaintiff's claim that the Section 3020-a Charges were initiated in bad faith, it is not more than a feather on the scale.

### b.  Lindsey Ferguson

Plaintiff next argues that Defendants' retaliatory motives toward her can be observed

through their attitude regarding her romantic relationship with a co-worker named Lindsey Ferguson. See Pl.'s Mem. of Law at 7–8. For instance, school administrators apparently: (1) told Ferguson not to associate with Plaintiff and complained when the two of them sat together at a football game; (2) called Ferguson insubordinate for not discussing the relationship with superiors; (3) criticized the couple for eating lunch together; (4) hypothesized about them having sex in the faculty room; and (5) required Ferguson to account for her time in half-hour increments. See id. Plaintiff's argument seems to be that Defendants' distaste for her relationship with Ferguson was driven by their resentment for Stagliano I, and that therefore the Section 3020-a Charges were driven by lingering resentment, too.

The Court first notes that none of the Section 3020-a charges relate to Plaintiff's relationship with Ferguson, weakening the evidentiary force of these allegations. Defendants argue that "Ferguson is not a party to this action and any allegations related to her employment and evaluations lack relevance to the Plaintiff's case." Response at 9. The Court also fails to understand the relevance of these allegations of retaliation, particularly in light of Plaintiff's admission of the conduct for which she has been charged under § 3020-a. The leap from Defendants' alleged hostility to the Plaintiff-Ferguson relationship to the alleged bad-faith initiation of the Section 3020-a Charges is too great for the Court to make.

### 3. Distinguishing Stagliano I

Plaintiff argues unconvincingly that she presents an even stronger case for injunctive relief here than she did in Stagliano I. See Pl.'s Mem. of Law at 4. In Stagliano I, the Court allowed itself to interfere with the pending § 3020-a hearing against Plaintiff related to her absences because "Plaintiff ha[d] alleged sufficient facts to satisfy the bad-faith exception" to

Younger abstention. Stagliano I at 271. As evidence of Defendants' bad faith, the Court

highlighted: their failure to notify Plaintiff of her FMLA protections; Superintendent Miller's

refusal to accept Plaintiff's explanation for her absences; the disciplinary action taken against

other teachers for taking FMLA-protected leave; the district's failure to discipline a relative of

Superintendent Miller; and Superintendent Miller's statements at a meeting discouraging

teachers from taking consecutive days of sick leave. See id. at 271–72. Such facts took the

3020-a prosecution of Plaintiff in Stagliano I outside the "legitimate activities of the States."

Stagliano I at 272.

There is far less evidence of Defendants' bad faith here than there was in Stagliano I. In

that case, Defendants initiated § 3020-a proceedings against Plaintiff related to her absences

from work. See Stagliano I at 268. Defendants conceded in Stagliano I that Plaintiff's absences

would have been protected under the FMLA had she satisfied that law's notice requirements.

See id. at 269. In other words, the sole reason why Defendants brought the Stagliano I charges

appears to have been Plaintiff's apparent failure to comply with a procedural obligation that

would otherwise have excused her absences.

Unlike the Stagliano I charges, the Section 3020-a Charges appear to be well-supported

and not tainted by bad faith. They are not based on conduct that would be excused but for

alleged failure to comply with a procedural hurdle. They are based in large part on teacher-

student contact that Defendants credibly state was inappropriate. Plaintiff has not established

bad faith to allow this Court to intervene with the state proceeding as it did in Stagliano I.

**D.  Defendants' Justification for the Section 3020-a Charges**

Despite the above allegations of retaliation, Defendants argue that their imposition of

18

charges against Plaintiff was "legitimate." Response at 8. The Court agrees; Defendants'

justification for the charges—and Plaintiff's admissions to the relevant conduct—precludes the

Court from finding bad faith.

Plaintiff responds by arguing that the student's mother had no issue with him giving

Plaintiff the back rubs. See Pl.'s Aff. ¶ 91. But, as Defendants point out, "the District has an

interest in protecting students from such conduct, whether the parents' [sic] consent to the

conduct or not." Response at 8.

Defendants' justification for the Section 3020-a Charges is at least as strong as the

school district's justification in Levich v. Liberty Cent. Sch. Dist., a case cited by Defendants in

which a court refused to enjoin a § 3020-a hearing under the bad-faith exception to Younger.

258 F. Supp. 2d 339 (S.D.N.Y. 2003). There, after being reassigned to teach a subject with

which he apparently lacked familiarity, a teacher sent a letter to parents asking them not to

blame him if the students fail his course or the corresponding Regents examination. Id. at 341.

The court observed that "[t]he School District clearly has an interest in ensuring that its teachers

do not use the parents of their students as a forum for their personal grievances about

administrative decisions." Id. at 344.

Defendants' interest here is greater than simply avoiding embarrassment or maintaining

parents' faith in the strength of their children's education. See id. They seek "to prevent the

inappropriate and impermissible contact between a teacher and student, conduct which is one of

the most serious concerns for a School District." Response at 18.

In sum, Plaintiff can point only to a "past history of personal conflict," Cullen, 18 F.3d

at 104, with Defendants. A contentious employer-employee relationship alone is not enough to

meet the "heavy burden," <u>Smith</u>, 887 F.Supp. at 587,  required for this Court to disregard the principles of comity that form the basis of <u>Younger</u> abstention. Plaintiff generally admits to the conduct she is accused of in the Section 3020-a Charges. In pursuing those charges, Defendants appear to be pursuing legitimate ends, such as appropriate levels of contact between teachers and students. The Court cannot find that Defendants have "no reasonable expectation" of succeeding at the § 3020-a hearing. Abstention is therefore warranted.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' motion for a temporary restraining order and preliminary injunction (Dkt. No. 20-14) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       September 04, 2020
                       Albany, New York

Lawrence E. Kahn
U.S. District Judge